In the Matter of JACOB RUD (Also Known as JACOB RUDD), an Attorney, Respondent.

First Department, July 3, 1942.

*Einar Chrystie*, for the petitioner.

*David Steckler*, for the respondent.

GLENNON, J.  The respondent was admitted to the bar in the State of New York on March 17, 1922, at a term of the Appellate Division of the Supreme Court of the State of New York, Second Department.  He engaged in the general practice of the law and eventually built up a substantial real estate business.  In recent years he has devoted most of his efforts to tax certiorari proceedings.

In or about the year 1929, due to the financial and real estate market conditions, he owed his creditors about $25,000.  This amount was reduced gradually by him, so that by the year 1938 his indebtedness amounted to approximately $3,000 or $4,000.  At least three judgments had been entered against him because of his inability to meet his obligations.

He was first charged with professional misconduct by another attorney in connection with his failure to turn over fees growing out of certain certiorari proceedings.  In defense of this claim against him, the respondent testified before the official referee to whom the charges were referred for hearing, that there was a genuine controversy between him and the attorney with respect to the amount to which the latter was entitled.  It developed that in 1936 the said attorney instituted an action against the respondent to recover $2,928.84, the amount which he claimed was due him.  After a motion for an examination before trial was made, the action was settled for $1,400.  The amount of the settlement was paid in 1937.

The respondent testified before the referee that he was at all times ready, willing and able to pay the amount to which the aforesaid attorney was entitled. He stated that he had a number of pending matters from which he could obtain advances on account of his fees, and that for the years 1934 to 1937 he had an annual income of approximately $15,000.

In contradiction of respondent's testimony with reference to his earnings, the Bar Association introduced in evidence transcripts of two examinations of him in supplementary proceedings. Two of the judgments to which reference has already been made were entered against him by the Empire Trust Company. In connection with one of these judgments, he was examined in supplementary proceedings on November 19, 1934, and gave the following testimony: " Q. Have you any right or interest in any action now pending in any court?   A. No.   Contingent retainers. Q. How do you pay for your living expenses?   A. On borrowed money mostly.   Q. What is the source of your income which you use to support yourself?   A. From friends, and relatives and also my wife's people.   Q. Have you any money with you?   A. No; about $2.   My sole income is from my practice of law and for the last eight months I have made about $50 per week on the average out of which I had to pay for my office and its expenses.   My rent is $35 per month and at the time I owe for the month of November.   I also owe the November rent on my apartment.   My apartment lease has about 9 months to go.   My office lease has about a year to go.   At the present time I am unable to make any payment on account of the judgment herein.   I have no present connection with any corporations but rely on the practice of law for an income.   I have no cases pending in any court."

On February 19, 1935, the following was added to his examination: " My financial status is the same.   I am absolutely without funds to pay this judgment.   I have no real or personal property of any substantial value."

The respondent was examined also in supplementary proceedings under a judgment recovered against him by D. A. R. Management Corporation. He was examined in March, 1935, and July, 1936. In March, 1935, he gave the following testimony: " Q. Then you have no practice whatsoever outside of your certiorari?   A. Yes, and they are no good.   You can't make a living out of those. Q. How do you support yourself at present?   A. I don't.   Q. How do you purchase your necessaries for day to day?   A. I borrow money from time to time until I can swing through."

The examination was adjourned to July 22, 1936, and on that day the respondent testified: " Q. How much rent are you paying

at the present time?  A. Nothing.  Can't afford it.  Q. Is there any money that will be due you from any clients on deals that you are now working on?  A. Nothing whatever.  Q. Other than the money that you borrowed from your father-in-law, did you borrow any money from anybody else?  A. No.  Q. He was the only person?  A. Yes, I cannot borrow from anyone else."

The referee after analyzing the various transactions which took place between the respondent and the attorney who preferred the charges against him, pointed out that the respondent had actually paid to the attorney over $600 more than he really was obligated to pay.  His report reads in part as follows:

" The respondent has never disclaimed his liability, nor has he at any time attempted to avoid, deceive or defraud Lessin.  It is my opinion that the conduct of the respondent was actuated by an honest belief that Lessin was exacting from him more than he was really entitled to, and for that reason resisted his demand.  While it is true that the respondent's testimony in his examination in supplementary proceedings  *  *  *  is in conflict with the respondent's testimony before me, still I am convinced that before me his testimony was straightforward and truthful and was given in the honest belief that he was justified in conducting himself in his relations with Lessin as he did.  *  *  *

" My conclusion, after a careful consideration of all the evidence, is that the charges have not been sustained."

A supplemental petition was subsequently filed against respondent charging him with giving false testimony as to his earnings, either before the referee or in the examinations in supplementary proceedings.  The matter was referred again to the same official referee.  No additional testimony was given, the parties having stipulated that the testimony taken on the charges contained in the original petition was deemed to be the testimony on the charges alleged in the supplemental petition.  In his report, with reference to the supplemental charges, the referee said in part: " When the respondent testified before me on the conversion charge I believed his testimony to be true.  Therefore, I report that it is my opinion the respondent, while under oath as a witness in supplementary proceedings  *  *  *  testified falsely, and the charges as set forth in detail in the supplemental petition have been sustained."

We believe that the conclusion reached by the official referee was correct.  While the situation presented may be rather unfortunate in so far as the respondent is concerned, and while he undoubtedly has made every effort to pay his debts, still the fact remains that the testimony he gave in supplementary proceedings was false.  We are mindful of the fact that the false testimony

did not grow out of the relationship of attorney and client. Nevertheless, we feel that such conduct by a member of the bar in a situation similar to the present requires punishment.

Following the procedure adopted in *Matter of Engler* (245 App. Div. 482), the respondent will be suspended for one year with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

TOWNLEY, DORE and CALLAHAN, JJ., concur; MARTIN, P. J., dissents and votes to disbar.

MARTIN, P. J. (dissenting). It is unnecessary to repeat the facts in this case for the reason that they are set forth in the prevailing opinion, and conclusively establish the unfitness of the respondent to remain a member of the bar. The facts in the *Engler* case differ substantially from those in the present case. In addition, mitigating circumstances present in the *Engler* case were taken into consideration by the court.

I vote to disbar the respondent.

Respondent suspended for one year.